Rachel R. WILLIAMS, a minor, and Roger L. Williams and Rebecca Williams, individually and as parents of Rachel R. Williams, Plaintiffs,

v.

Joseph M. OVERTURF, individually and as Director of Special Education for the School District of the Menomonie Area, Wisconsin; Brian A. Benson, individually and in his official capacity as the M-Team Coordinator and School Psychologist for the School District of the Menomonie Area, Wisconsin; the School District of the Menomonie Area, Wisconsin, a municipal corporation organized under the laws of Wisconsin; the School Board of Directors of the Menomonie Area, Wisconsin School District, and Judy Ganzmiller in her official capacity as President of this Board; David R. Ross in his official capacity as the Superintendent of the School District of the Menomonie Area, Wisconsin; and Herbert J. Grover, individually and in his official capacity as the Superintendent of the Wisconsin Department of Public Instruction, his employees, agents and attorneys, Defendants.

No. 83-C-879-S.

United States District Court, W.D. Wisconsin.

Feb. 24, 1984.

Don A. Hermanson, Wisconsin Judicare, Inc., Wausau, Wis., John Franz, Wis. Coalition for Advocacy, Inc., Madison, Wis., for plaintiffs.

Michael E. Perino, Mulcahy & Wherry, Daniel D. Stier, Asst. Atty. Gen., Madison, Wis., for defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Before the Court are the motions of the defendants to dismiss this action which is principally based on the Education for All Handicapped Children Act (EHA), 20 U.S.C. § 1401 et seq. Jurisdiction is asserted under 20 U.S.C. § 1415(e)(4) and 28 U.S.C. §§ 1331 and 1343. The facts as alleged are as follows:

## FACTS

Plaintiff Rachel Williams is an eight-year-old child living with her parents, Roger and Rebecca Williams, who are also plaintiffs, in Dunn County, Wisconsin. The family lives within the area served by the defendant School District of the Menomonie Area. Other defendants include the school board of the district and the president of the board, the superintendent of the district, and two employees of the district involved in special education (collectively, the School District). Also named as defendant is Herbert Grover, the Superintendent of the Wisconsin Department of Public Instruction (DPI). Grover, as Superintendent of DPI, is the officer responsible for ensuring compliance with the dictates of the EHA.

Rachel has suffered from a condition of the skin and nervous system known as Hypomelanosis of Ito Syndrome since her birth on May 22, 1975. The condition has produced in Rachel very poor muscle tone, mental retardation, developmental delay and a tendency for seizures. She requires physical, occupational and speech therapies.

From February, 1976 until June, 1978, Rachel received physical and occupational therapies from the Infant Development Program of the Unified Services Board of Western Wisconsin. She was admitted to the School District's early childhood special education program at River Heights School in November, 1978. From that time until February 1, 1982, Rachel was served in accordance with an individualized education program (IEP) which called for twice-weekly occupational therapy sessions of one-half hour each, and a limited variety of training aimed at development of basic sensory and motor skills.

Rachel's treating physician suggested, in May, 1979, that she receive a program through the summer months to prevent regression. Some services were provided in the summers of 1979 and 1980. None have been provided during the summer since 1981. Rachel's mother requested a

full-day program in March, 1981. The request was denied.

The School District Multidisciplinary Team (M-Team) formulated Rachel's IEP from 1978 to 1981. The IEP was virtually identical from year to year despite indications that the program produced little or no progress. No independent consultations were undertaken by the M-Team for Rachel.

During the 1981–82 school year, Rachel's parents became concerned about the instruction being received by her. The mother witnessed what she believed to be improper treatment and she incurred negative reactions from school personnel concerning her participation in Rachel's education.

In February, 1982, one-to-one instruction to Rachel was suspended without notice to the parents despite the fact that such instruction was part of the IEP. The School District termed this action an "experiment."

In May 1982, the M-Team recommended "residential treatment custodial care" for Rachel. Defendant Overturf, the School District's Director of Special Education, issued a placement notice authorizing educational placement in a residential treatment facility. Rachel's parents refused to approve the placement recommendation. Overturf then told the M-Team that, since Rachel had shown no benefit from the District's program, the M-Team was without authority to recommend placement. The M-Team issued a second report stating that no placement recommendation would be made. Rachel's parents refused to approve this recommendation.

In July 1982, Rachel's parents filed notice that they would appeal the placement decisions issued in May, and would also appeal the conduct of the district toward Rachel.

Pursuant to state law, the School Board appointed Dr. Robertshaw to act as the independent hearing officer for this appeal. A hearing was scheduled for August 19, 1982, but was continued for purposes of appointing an independent evaluator for Rachel. Rachel's current IEP, including one-to-one instruction, was continued pending decision.

Robertshaw appointed Dr. Luanna Voeltz of Minnesota as the independent evaluator.

During the pendency of the decision, Rachel's parents were dissatisfied with the instruction being provided to Rachel. In September 1982, the parents had Rachel evaluated at the Central Wisconsin Center for the Developmentally Disabled in Madison. The staff at this facility recommended a comprehensive program of physical and occupational therapy geared to developing Rachel's motor, communications and social skills. From October 19, 1982 to January 26, 1983, the parents enrolled Rachel in the Community Oriented Rehabilitation Program (COR) at the Central Wisconsin Center. Significant progress in certain skills was noted by the staff of this facility. The staff recommended a lengthy list of activities and therapies designed to improve various skills. These recommendations were outlined at a discharge meeting which was attended by defendant Benson, a member of Rachel's M-Team.

On November 22, 1982, Dr. Voeltz, the independent evaluator, issued her report. The report was critical of the instruction which had been given to Rachel during the past four years, finding them "responsible for the limited educational progress attained by Rachel." Dr. Voeltz also noted that Rachel displayed "excellent potential for considerable educational gains given appropriate opportunities to learn."

Dr. Robertshaw, the hearing examiner, requested that the M-Team be reconvened to consider the COR and Voeltz reports in deciding on a final placement. On March 23, 1983, after M-Team consideration, defendant Overturf executed another placement notice recommending no educational program placement. The parents refused this placement.

After Rachel's release from the COR program, she returned to River Heights School. The provisions of Rachel's last IEP were not being consistently provided,

and some techniques and procedures which were used were contrary to those recommended by the COR staff and threatened her well-being. The School District staff was increasingly hostile to the parents.

After a due process hearing in April, 1983, Dr. Robertshaw issued his decision on June 30, 1983. He concluded that Rachel was entitled to a full-day educational program including occupational and physical therapy, language/communication therapy and special educational instruction beginning in the fall of 1983. He did not address the parents' requests for a twelve-month program and for exclusion of persons previously involved in Rachel's instruction in the future. Nor did he award the parents costs or attorney's fees.

The School District filed an appeal of Robertshaw's decision with DPI and asked for an order relieving the District of implementation of the order pending the appeal.

Rachel's parents also appealed concerning the relief which was not granted by Robertshaw. The parents also asked that the appeals be heard by an impartial hearing officer instead of defendant Grover or his legal counsel because the legal counsel had advised the District during the process and because the School District's legal position was, in part, based upon DPI memos signed by Grover. The parents also complained that the appeal process violated 20 U.S.C. § 1415(c) and 34 C.F.R. § 300.510.

Defendant Grover issued an interim order staying implementation of the Robertshaw order on August 20, 1983. He also denied the parents' request for interim implementation of Robertshaw's order. Although § 115.81(7), Wis.Stats. required a written decision by the Superintendent of DPI within 30 days after a parent's written appeal, defendant Grover had issued no final decision by the time this complaint was filed on October 5, 1983.

After this complaint was filed, and during the period the parties were briefing this motion to dismiss, defendant Grover did issue his final decision on November 21, 1983. His decision rejected the School District's main contention on appeal—that because Rachel was incapable of benefiting from an "educational" program, she did not have "educational needs"—and stated:

> In this case, the District failed to make an appropriate placement for Rachel Williams based on its erroneous belief that she did not have exceptional educational needs. I am of the opinion that the District should be provided an opportunity to exercise its authority under sec. 115.85(2), Stats., subject to its observance of all procedure safeguards concerning the rights of Rachel under both state law and the EHA.

He remanded the case to the School District for the formulation of a new IEP. He further denied the parents the relief requested in their cross appeal, specifically holding that the personnel who will be providing instruction to Rachel is a subject for School District consideration on remand; that the COR evaluation was a "self help" activity and thus the parents could not be reimbursed; that an award of attorney's fees was specifically unauthorized; that the provision of an extended-year program for Rachel should be determined in the context of the remand; and that the decision on the appointment of a monitor of District compliance would be reserved pending formulation of an IEP on remand.

## MEMORANDUM

In this fourteen-count complaint, the plaintiffs seek an extensive array of injunctive and declaratory relief, as well as compensatory and punitive damages. They also request attorney's fees. These claims can be classified into several different types, more than one of which may appear in a single count:

1. Claims based on and pursuant to the EHA;

2. Claims based on the EHA, but pursuant to 42 U.S.C. § 1983;

3. Claims based on the Due Process Clause of the Fourteenth Amendment brought pursuant to § 1983;

4. Claims based on the Equal Protection Clause of the Fourteenth Amendment brought pursuant to § 1983;

5. Claims based on and pursuant to the Rehabilitation Act of 1973; and

6. Pendent state claims.

Defendants' motions to dismiss will be addressed with respect to each of these types of claims.

### 1. EHA Claims

Under the EHA, state administrative remedies must be exhausted prior to the filing for judicial review. 20 U.S.C. § 1415(e)(2). *Timms v. Metropolitan School District of Wabash County,* 722 F.2d 1310, 1316 (7th Cir.1983).

When this case was filed, the final decision of the State Superintendent of Public Instruction, the decisionmaker at the last step of the state administrative process, was pending. Under state law his decision was overdue. Wis.Stats. § 115.81(7). A final decision was rendered, however, during the pendency of the dismissal motions.

■ Although the plaintiffs argue that they ought to be able to assert exhaustion of remedies because of the tardiness of the final decision, federal law does not agree. When Congress has allowed a failure to respond to be equated with a negative response for purposes of exhaustion of remedies, it has so provided in no uncertain terms. *See,* for example, the Freedom of Information Act, 5 U.S.C. § 552; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Congress did not do so in the EHA. The Court must conclude that plaintiffs cannot assert exhaustion of remedies while a final decision is pending, even if it is late. The remedy in such a situation is mandamus.

■ Nor can the fact that defendant Grover finally issued a final decision allow these claims to go forward. His decision rejected the School District's argument that the inability of Rachel to benefit from an educational program absolved the District of providing Rachel of a program. He then remanded the case to the District for the formulation of an IEP in light of his decision, and the decision of the hearing examiner, Dr. Robertshaw.

This situation is similar to, if not identical to, the facts in *Timms,* supra. The Court of Appeals held that the plaintiffs in that case had not exhausted state remedies when the case was remanded to the hearing examiner for further factfinding. The EHA grants to the states the "primary responsibility ... to determine 'appropriate level of education ... [which] ... counsels deference to the state administrative process." *Id.* at 1317 (citation omitted). The "uncertainties" in the *Timms* case which influenced the Court are akin to the question in this case as to whether the School District will follow the findings of the hearing examiner now that its responsibilities have been clarified.

To the extent that defendant Grover's decision can be said to be final with respect to the issues raised by the plaintiffs after the hearing examiner's decision, a different analysis may be required.

As previously mentioned, state law requires a decision from the state superintendent within 30 days of an appeal. And the state regulations provide:

The superintendent shall issue a decision based on the official record within 30 days after the parent has filed a written appeal. If the superintendent does not make a decision within 30 days after the parent has filed a written appeal, the decision appealed from shall be deemed affirmed.

§ PI 11.06(9)(b), Wis.Admin.Code. The Court must conclude that the above provision relates only to the parents' cross appeal, and not to the School District's appeal.

The Court seriously questions, on efficiency grounds, whether it should entertain part of this case while the major bone of contention between the parties is being determined elsewhere, especially when the remainder of the case might reappear. However, even if this consideration were absent, and even if the federal exhaustion requirements should not be read to pre-

empt a review of the case until the process below is completed, the Court must conclude that the issues raised by the plaintiffs which were disposed of by the State Superintendent were correctly decided.

The parents presented eight issues on appeal. Two of these, the right to present additional evidence to the State Superintendent and the appointment of an impartial hearing officer, are moot. They were denied by defendant Grover in his interim order, and concerned only the conduct of his review. Since the plaintiffs substantially prevailed before him, at least on the main issue, the need to face these issues is over.

Three others were deferred when defendant Grover finally acted: A request that the personnel to be used in Rachel's new program be different than those previously assigned to her; the implementation of an extended year program; and the appointment of Dr. Voeltz as a monitor. This Court believes that these requests must, under the circumstances of this case, be denied at this stage because they are integral parts of the subject matter of the formulation of the IEP for Rachel. Furthermore, plaintiffs have offered no legal justification for providing such relief. One other request which was denied in the interim order, implementation of Dr. Robertshaw's order pending appeal, must be denied, if not because of mootness, because it also is an issue which must be decided within the context of the continuing administrative process. Furthermore, it appears that defendant Grover's rejection of plaintiffs' position on this request is legally correct.

The two final issues raised on appeal, and which were denied outright when defendant Grover finally issued his decision, were plaintiffs' requests for attorney's fees and for reimbursement of the cost of the COR evaluation. Attorney's fees are clearly not allowed under the EHA and plaintiffs' claim in this respect is without merit.

■ The question of reimbursement for the COR evaluation is much more difficult. Defendant Grover decided that the COR

evaluation was essentially a self-help diagnostic decision that duplicated the diagnosis provided by the School District when Robertshaw appointed Dr. Voeltz. That was a reasonable conclusion but it is a factual one. The Court is not free to indulge in factual conclusions on a motion to dismiss. The law provides for reimbursement of such expenses, however, only when there is "a serious risk of injury to the child's physical health" or when the School District fails to comply with the procedural provisions of the EHA in an egregious, bad faith manner. *Anderson v. Thompson*, 658 F.2d 1205, 1214 (7th Cir. 1981). The complaint fails to factually support an inference of conduct which would rise to these standards. While a general "bad faith" allegation is made, there appears in the complaint no allegation of misconduct with respect to the School District's use of procedures. Nor does the complaint contain allegations which implicate the kind of serious physical health dangers contemplated by *Anderson*.

Accordingly, the Court must conclude that the plaintiffs have not exhausted their administrative remedies. Dismissal of these claims is therefore necessary.

### 2. § 1983 Claims Based on the EHA

The complaint lacks clarity with respect to whether the substantive basis of some of the § 1983 claims is the EHA. The Court assumes that some are so based. At least part of the claim against defendant Benson in Count VI, and part of the claim against defendant Overturf in Count V, appear to be of this type.

■ The Court in *Anderson v. Thompson*, 658 F.2d 1205 (7th Cir.1981), faced precisely this question. The Court held that the EHA was the exclusive remedy for violations of its terms because it provided an express private right of action. *Id.* at 1214–1217. This decision conclusively shows that no claim can be stated under § 1983 for violations of the EHA.

### 3. § 1983 Claims Alleging Due Process Violations

The complaint contains a multitude of claims which allege that the due process

rights of Rachel and her parents were violated by the various defendants. *Anderson*, supra, is not necessarily dispositive. *Id.* 658 F.2d at 1217, n. 19.

■ The Court recognizes that liberty and property interests of the plaintiffs are implicated by the alleged violations of the EHA and the state law implementing it. The Court must, however, question whether, logically, liberty or property has been deprived while the process designed to protect these rights is still ongoing. The Court is compelled to conclude that virtually all due process claims in the complaint must be held to be groundless for the reason that plaintiffs have failed to exhaust the administrative remedies under state law. The Court is not imposing an exhaustion requirement on these due process claims; rather it is recognizing that due process has not been deprived until the state process is completed. *See Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Ellis v. Hamilton*, 669 F.2d 510 (7th Cir.1982), cert. denied, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631; *State Bank of St. Charles v. Camic*, 712 F.2d 1140 (7th Cir.1983).

■ One of plaintiffs' claims gives the Court pause, however. The complaint alleges that, for a period in early 1982, the defendants were responsible for an "experiment" on Rachel which consisted of withholding one-to-one instruction which was part of her IEP in order to discover whether she would benefit by the change in program. Rachel's parents were not consulted, nor did they consent, requirements which are mandated by state law; specifically, Wis.Stats. § 115.81(3). It might be argued that the imposition of the change in IEP without the parents' consent deprived them of liberty with finality. However, it is apparent that this violation, assuming it is one, is so *de minimis* as to hardly rise to constitutional significance. The damage here supposedly amounts to Rachel being deprived, for a short period, of an educational benefit that the parents believe was worthless at any rate.

■ Furthermore, it appears that whatever right Rachel and her parents were deprived of arises under the EHA, which is presumably remediable under its terms. Thus, the doctrine of *Parratt*—that a deprivation has not been without due process when the right can be otherwise vindicated—is applicable.

Accordingly, plaintiffs' due process claims must be dismissed.

4. *§ 1983 Claims Alleging Equal Protection Violations*

Plaintiffs have alleged that the Equal Protection Clause of the Fourteenth Amendment has been violated because the School District denied Rachel educational placement while providing placement to other children with special educational needs.

■ The Court must conclude that the Equal Protection Clause has not been violated under the facts alleged in this complaint. It is clear that Rachel has never been totally excluded from a program by the School District. Even after the School District decided to offer no placement, Rachel was continued in the program under her previous IEP pending the hearing and appeal. The previous IEP had been approved by the parents when originally imposed.

Furthermore, in much the same way that liberty or property had not been deprived without due process, the Court must logically question whether equal protection can be said to have been violated during the pendency of the process which has not been exhausted. The law requires that Rachel be given a "free appropriate public education." 20 U.S.C. § 1412(1). It is apparently the equal protection of this law which is allegedly being denied in this case. Plaintiffs have not explained how there can be such a denial when the process through which the "appropriate" education is formulated is still incomplete. In a very real sense, an equal protection claim is not yet ripe, and will be ultimately decided through the process which is provided under the EHA. Although stated somewhat differently, this is essentially the holding in *Har-*

*ris v. Campbell,* 472 F.Supp. 51 (E.D.Va. 1979) and of *Calhoun v. Illinois State Bd. of Educ.,* 550 F.Supp. 796 (N.D.Ill.1982).

Accordingly, plaintiffs' equal protection claims must be dismissed.

5. *§ 504 Rehabilitation Act of 1973, 9 U.S.C. § 794*

█ In *Timms,* 722 F.2d at 1318, the Court of Appeals stated:

> Whether or not section 504 itself can be the basis for a claim in these odd circumstances, it cannot be used to circumvent the procedural requirements imposed by the EAHCA when the two claims are parallel, because to do so would thwart the intent of Congress, manifested in the structure of the more detailed and specific EAHCA. This is true for procedural challenges to state and local agency action as well as for challenges regarding substantive placement decisions, because the EAHCA provides for scrutiny of alleged procedural irregularities.

(citations and footnote omitted). Thus, it is clear that a claim under the Rehabilitation Act cannot stand when the EHA covers the same territory.

The Court does note the footnote to the first clause quoted above, *Id.* at 1318, n. 4, where the Court of Appeals stated that a Section 504 claim would be proper in a case of complete exclusion. In this case the School District has asserted the right to completely exclude Rachel from a program and the plaintiffs have explicitly stated that such exclusion is the basis of Count II, and, implicitly, one of the claims against defendant Grover in Count VIII. However, it is clear from the complaint that no such exclusion has taken place as yet. Plaintiffs chose to litigate this case through the EHA process where the appropriate program for Rachel became, and continues to be, the central issue.

Accordingly, the claim based on the Rehabilitation Act must be dismissed.

6. *Pendent State Claims*

It is clear and well settled that pendent state claims must be dismissed when the federal claims are disposed of before trial.

*United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Since all of plaintiffs' claims have been dismissed pursuant to the foregoing opinion, the pendent state claims must also be dismissed, without prejudice.

### ORDER

IT IS ORDERED that defendants' motions for dismissal are GRANTED. The complaint is DISMISSED without prejudice or costs.