**DANIEL B and his parents Mr. and Mrs. B, Plaintiffs,**

v.

**WISCONSIN DEPARTMENT OF PUBLIC INSTRUCTION, Herbert Grover, The Glendale-River Hills School Board of Education District No. 1, John Belton, Robert Kattman, Edwin Hill, and Joseph Amato, Defendants.**

Civ. A. No. 83–C–1534.

United States District Court, E.D. Wisconsin.

March 5, 1984.

---

Robert Sutton, Sutton & Kelly, and Victor Weiss, Milwaukee, Wis., for plaintiffs.

Daniel Stier, Asst. Atty. Gen., Madison, Wis., for defendants Wis. Public Instruction and Grover.

Nancy J. Meissner, Riordan, Crivello, Carlson, Mentkowski & Henderson, Milwaukee, Wis., for defendant Amato.

Patrick W. Schmidt, Quarles & Brady, Milwaukee, Wis., for remaining defendants.

## DECISION AND ORDER

TERENCE T. EVANS, District Judge.

An emotionally disturbed and disabled boy, Daniel B, and his parents (who have abbreviated their names in order to conceal their identity) have brought this action to obtain relief from a decision of the Wisconsin Superintendent of Public Instruction. The decision concerns Daniel's placement in a special educational program. They also seek monetary damages for certain actions taken by the Superintendent and other defendants which allegedly constitute bad-faith violations of the federal and state laws providing for free, appropriate special education for handicapped children, constitutional deprivations of due process, intentional misrepresentation, intentional infliction of emotional distress, and invasion of privacy.

The case is before me on the defendants' motion to dismiss all except the first count of the complaint. For the reasons stated below, the motion is granted.

## FACTS

The following facts, essentially lifted from the Amended Complaint, are accepted as true for purposes of the pending motion to dismiss. Daniel is a 14-year-old student who lives in the Glendale-River Hills School District. He has been identified as a handicapped student by the school district. He has exhibited exceptional educational needs from his first contact with the school system. Because of his special needs, his parents enrolled him in a private school between 1975 and 1976. The plaintiffs claim that during this period, Daniel made steady and regular progress in both emotional and educational development.

John Belton, one of the defendants, is the Administrator and Superintendent of Schools in the school district. Beginning in 1975, Belton attempted to persuade Daniel's parents to withdraw him from the private school and enroll him in a public school within the district. Belton represented to Daniel's parents that the district had better facilities and personnel to provide an individual program for Daniel. Relying upon these representations, Daniel's parents enrolled him in the district schools in 1976.

In the years that followed, the plaintiffs contend, the defendants failed to provide appropriately for Daniel's educational needs. Furthermore, the plaintiffs claim that Daniel's condition actually worsened. He was subjected to physical and emotional abuse. He regressed to a state of semi-autism, became a recluse and developed deformed feet and hands. Plaintiffs contend that Daniel's educational needs have now been abandoned altogether.

Among other allegations which they make are that they had to pay $15,000 to a local hospital in order to obtain the diagnostic evaluation which revealed the deficiencies of which they complain; that the defendants misrepresented to them that a teacher designated to oversee Daniel's education was a certified special education teacher; and that the defendants refused to permit Daniel's parents to observe his classroom conditions or to furnish information concerning him.

Although Daniel's parents objected frequently during the course of these years, they did not formally challenge his particular placement and individual educational program until the 1982–1983 school year. For this year, and this year only, Daniel's parents pursued administrative relief as set forth in Chapter 115 of the Wisconsin Statutes. A Hearing Officer reviewed Daniel's proposed program and claimed that it was inappropriate for him. (Despite the favorable outcome, Daniel's parents challenge the hearing itself on the grounds that they were required to act as their own legal counsel.) The Hearing Officer's findings were appealed to the Wisconsin Superintendent of Public Instruction, Herbert G. Grover, who reversed the decision. His decision was issued, the plaintiffs contend "at least 7 months late". The plaintiffs claim that because of the alleged untimeliness of the decision, no educational program has been prepared or implemented for Daniel for the 1983–1984 school year.

The plaintiffs also attack Belton for disclosing Daniel's identity and the nature and extent of his emotional handicaps, claiming this to be an invasion of their privacy.

## DISCUSSION

1. *Count I.*

The plaintiffs' claim most urgently in need of immediate attention is described in ¶ 35 of the complaint: it asserts that Superintendent Grover's decision governing Daniel's placement during the 1982–83 school year, along with the effect that decision had on Daniel's education during the 1983–84 school year, is reviewable by me and that the decision itself was "erroneous, arbitrary and capricious and contrary to the facts and the law". They seek judicial review of Grover's decision and declaratory and injunctive relief reversing the decision.

The federal statute under which the plaintiffs seek relief is the Education for All Handicapped Children Act (EAHCA), 20 U.S.C. § 1401, *et seq.* EAHCA represents federal efforts to ensure that state school systems will provide the most appropriate special education to the widest possible number of disabled students who need them. The special efforts which states are required to undertake in implementing EAHCA (on the threat of losing federal education funds) are reflected in § 115.76, *et seq.*, Wis.Stats.

It appears from the submissions of the defendants that this claim is not contested as part of the motion to dismiss. Instead, the defendants have aimed their attack at other features of the plaintiffs' case. Thus, the defendants appear to concede that Count I is well pleaded and appropriately before this court for determination.

### 2. *Count II.*

In Count II, the plaintiffs expand their request for declaratory relief beyond the decisions made with respect to the 1982–83 and 1983–84 school year to decisions going back to 1975. What makes the claims asserted in Count I decisively distinct from those made in Count II is that the 1982–83 decision under attack in Count I has been fully reviewed by the appropriate administrative bodies while the earlier decisions have not. Because the plaintiffs have failed to exhaust the administrative remedies provided for them as a part of the statutory entitlement under which they seek relief, I must dismiss these claims.

The Court of Appeals for the Second Circuit extensively reviewed EAHCA's procedural scheme in *Riley v. Ambach,* 668 F.2d 635 (2d Cir.1981). The court described EAHCA's exhaustion requirement:

> The philosophy of the Education for All Handicapped Children Act is that a plaintiff must first exhaust the state administrative remedies provided under the Act, including the administrative appeals provisions, before bringing an action in federal court that challenges the evaluation and placement of a child.... Only when these state administrative remedies have been exhausted may a suit be brought in federal court. 20 U.S.C. § 1415(e)(2).

*Id.* at 640. Such a philosophy protects several very important interests: the requirement respects the state interest in establishing and maintaining a comprehensive scheme of regulation for state schools. The requirement vests authority over these types of decisions in an expert supervisory body, far more familiar than a federal court with the local factors and educational needs involved in administering special education programs. The requirement insures that if the expert agency cannot resolve the problem itself, the record on which the federal court must decide will be fully and efficiently illuminated for the court's decision. *Id.* The principles which the *Riley* court outlined comport fully with the principles underlying the general doctrine of exhaustion which has long been settled in

the jurisprudence of administrative law. See *McKart v. United States,* 395 U.S. 185, 193–195, 89 S.Ct. 1657, 1662–1663, 23 L.Ed.2d 194 (1969); *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–464, 82 L.Ed. 638 (1938).

With respect to the decisions which come under attack in Count II, no such administrative review took place. The plaintiffs contend that they made frequent objections about the way their son was being treated during the years 1975 through 1981, and that his placement received the "tacit approval" of higher authorities. However, their objections have not been investigated or reviewed under the procedures established in § 115.81, Wis.Stats. The kind of probing review which the exhaustion doctrine requires was never undertaken before the 1982–83 school year. For that reason, Count II is dismissed.

### 3. *Count III.*

In Count III, the plaintiffs assert that the factual allegations made in ¶¶ 27, 28 and 29 of the complaint amount to deprivations of constitutional rights which are redressable under 42 U.S.C. § 1983. These allegations raise three separate claims which allegedly violate the due process provisions of the Constitution: (1) Daniel's parents were denied information about Daniel's education and the opportunity to observe his education and progress. (2) The defendants failed to notify them of their legal rights and remedies under federal and state law. (3) They were not provided with free legal counsel to represent them at the hearing which was called in order to review Daniel's proposed 1982–83 program, even though the defendants had retained legal counsel paid for by public funds.

The allegations on which Count III is based are not sufficient to state a claim for relief under § 1983. Claims (1) and (2) are insufficient to invoke § 1983 relief because EAHCA itself was intended to be the exclusive remedy for these claims.

With regard to claim (1), 20 U.S.C. § 1414(a)(1)(C)(iii) mandates that states as-

sure that educational programs for handicapped children will include "the participation and consultation of the parents ... of such children." As for claim (2), § 1415(a) (itself entitled "Procedural Safeguards") requires that states assure that handicapped children and their parents are "guaranteed procedural safeguards with respect to the provision of free appropriate public education".

Where the Act itself provides the measures necessary to protect the entitlements which it creates, courts have consistently held that plaintiffs may not turn to § 1983 for additional relief. The Court of Appeals for this Circuit gave the Act close scrutiny in *Anderson v. Thompson*, 658 F.2d 1205 (7th Cir.1981). The court ruled that the right to judicial relief for violation of EAHCA is exclusively provided by the Act itself. The court relied on the analysis set forth in *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) and *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), which stated more broadly that § 1983 is not applicable in situations "where the governing statute provides an exclusive remedy for violations of the Act." *Id.* at 1215, quoting *Pennhurst* 451 U.S. at 28, 101 S.Ct. at 1545, *Thiboutot* 448 U.S. at 22 n. 11, 100 S.Ct. at 2514 n. 11.

The court then gave two reasons why the remedy provided by EAHCA is exclusive. First, just like the statutory remedies analyzed in *Brown v. GSA*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (§ 717 of Title VII) and *Great American Federal S. & L. Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979) (Title VII), EAHCA contains an elaborate administrative and judicial enforcement system, which includes an express right of action for a party aggrieved under the statute. Second, EAHCA makes available injunctive relief only; the monetary damages which § 1983 provides are inconsistent with this form of remedy. The court wrote:

EAHCA ... cannot be given "unimpaired effectiveness" if a section 1983

action is available for EAHCA violations.... In *Adickes v. Kress & Co.*, 398 U.S. 144, 150–151 n. 5 [90 S.Ct. 1598, 1604–1605 n. 5, 26 L.Ed.2d 142] (1970), the Supreme Court discussed whether a section 1983 cause of action was possible in a case in which the governing statute did not provide damages.... The Court concluded that it was "very doubtful" that a section 1983 action could be brought because the remedy provided by the [act in question] did not provide for damages and thus was intended to be the "exclusive means of enforcing the Act's rights." 398 U.S. at 150–151. In the case before us we have determined that section 615(e)(2) precludes damages absent exceptional circumstances. Because 42 U.S.C. § 1983 is not similarly limited in scope of the relief it provides, the remedies in the two statutes are inconsistent.

*Id.* at 1216–1217.

The Court of Appeals reemphasized its conclusion two years later in *Doe v. Koger*, 710 F.2d 1209 (7th Cir.1983):

The Supreme Court in a recent case, *Board of Education of the Hendrick Hudson Central School District v. Rowley*, [458] U.S. [176] [102 S.Ct. 3034, 73 L.Ed.2d 690] (1982), discusses EAHCA for the first time.... A reading of the broad provisions of EAHCA in light of the Supreme Court's interpretation inevitably leads to the conclusion that EAHCA itself meets all a parent's needs to assure their children receipt of the benefits of the Act, whether the complaint raises only an *Anderson* issue, or, as in this case, attacks the procedures themselves.

*Id.* at 1212–1213.

Since claims (1) and (2) may constitute violations of the Act, the § 1983 claim based on them is dismissed.

Claim (3), described above, is dismissed for a different reason. Claim (3) could state a claim for § 1983 relief only if it alleged a deprivation of a constitutional right. However, I do not believe that the failure to provide free counsel in a EAHCA

hearing constitutes a deprivation of constitutional rights. In support of their contentions, the plaintiffs point to the landmark Supreme Court cases of *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) and *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Little more need be said about this argument than that these cases clearly relate to the right to representation by appointed counsel for indigent criminal defendants, both adult and juvenile, where there exists the possibility of incarceration. Thus, the § 1983 claims based on Claim (3), described above, are also dismissed.

### 4. *Count VI.*

In Count VI, the plaintiffs seek monetary damages of $5 million for the defendants' "egregious and bad faith failure to afford ... Daniel ... the procedural safeguards of federal and state law". Since, as I observed, the EAHCA constitutes the sole source of relief for the injuries which the plaintiffs allege and since EAHCA does not provide for monetary damages, this Count is dismissed.

As indicated above, the *Anderson* court took pains to determine whether Congress, in empowering district courts to "grant such relief as the court determines is appropriate", 20 U.S.C. § 1415(e)(2), intended to create a monetary remedy for violations of EAHCA. The court analyzed the statutory language, the legislative history and the purposes Congress wished to achieve in legislating on behalf of handicapped children. The court wrote:

> Congress did not envision appropriate relief generally to include a damage remedy. Instead, section 615(e)(2) appears to be the last of many procedural safeguards in a section aimed at insuring proper placements and programs for handicapped children.
>
> .   .   .   .   .
>
> In our view, the context makes clear that "appropriate" relief was generally intended to be restricted to injunctive relief, the statutory language giving the district judge wide latitude to fashion an individualized educational program for the child. Neither the statutory language nor the context in which it appears demonstrates a Congressional intent to create any type of educational malpractice action.

*Id.* at 1210–1211. The Court went on to specifically address the plaintiffs' contention that their due process claims are distinct from claims which might ordinarily relate to the student's educational program itself. The Court noted:

> Plaintiffs contend that a damage remedy is necessary to enforce these due process provisions. The EAHCA, however, already has a built-in mechanism for enforcement. Compliance with the statutory provisions is a prerequisite to the receipt of federal funds. *See* 20 U.S.C. § 1412.

*Id.* at 1213 n. 11.

It is true that the *Anderson* court conceded that there were two exceptions which might make monetary damages appropriate. However, neither of these exceptions applies to this case. First, the court ruled that damages might be appropriate where the placement designed by the state agency posed such "a serious risk of injury to that child's physical health" that it would be necessary for the parents to withdraw the student from the public school system and make alternative arrangements. In that case, the *Anderson* court authorized district courts "to recompense parents for the costs of those services the school district failed to provide." *Id.* at 1214. In Count VI, however, Daniel and his parents are not seeking damages merely for the costs they incurred in enrolling Daniel in a private school. Furthermore, a claim that placing Daniel in a private school was a necessary response to the alleged procedural deprivations would fall on account of their failure to exhaust their administrative remedies for the years in which Daniel was enrolled in a private school.

The second exceptional circumstance recognized by the *Anderson* court exists when the defendants act in bad faith by egregiously failing to comply with the procedur-

al provisions of § 1415. *Id.* at 1214. I do not believe that Count VI alleges circumstances which warrant money damages under this exception. In the first place, the allegations concerning the alleged inadequacies of Daniel's education prior to the 1982–1983 placement cannot qualify because these claims were never reviewed by the appropriate administrative body. *Id.* Indeed, it is ironic that Daniel and his parents are assailing the defendants for failing in bad faith to afford them procedural safeguards when they did not use the safeguards which are a conspicuous part of both Wisconsin and federal law. Furthermore, as a matter of law, the allegations concerning the 1982–1983 placement do not disclose any egregious or bad faith failure to provide the procedural safeguards required in 20 U.S.C. § 1415 or in § 115.81, Wis.Stats.; indeed, the allegations as much as admit that a full hearing was provided and that, furthermore, the Hearing Officer vindicated their position. To the extent that Daniel's complaint arises out of the failure of Superintendent Grover to affirm the Hearing Officer's findings, that is a matter for review of this court which is addressed in Count I. Finally, the *Anderson* court ruled that the "bad faith" exception justifies a money award only to those parents who have been forced to arrange appropriate services at their own expense, and only for the cost of those services. *Id.* Since Daniel was not enrolled in an alternative placement during the 1982–83 school year, money damages are not available.

### 5. *Counts IV and V: Claims Arising Under State Law.*

■ Counts IV and V allege violations of the Wisconsin law of intentional misrepresentation, negligence, intentional infliction of emotional distress, and invasion of privacy. These claims must be dismissed for lack of jurisdiction unless I find it appropriate to exercise pendent jurisdiction over them. Because I do not feel that it would be appropriate to exercise pendent jurisdiction over them in this case, they are dismissed. In *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Court cautioned lower courts against exercising their powers of pendent jurisdiction in cases similar to this:

> That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims ... Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a sure-footed reading of applicable law.

*Id.* at 726, 86 S.Ct. at 1139 (footnotes omitted).

In this case, the plaintiffs wish to append damage claims involving complicated state law violations to a simple federal claim for review of a state administrative decision which seeks declaratory and injunctive relief only. Each of these claims requires different forms of adjudication. The federal claim for review will require expedited consideration (in order to assure that if Daniel is improperly placed, a more appropriate placement can be found before his education is further marred), it will be heard by the court rather than a jury, and the compilation of information pertinent to its resolution has already been accomplished. The state claims, on the other hand, will involve a trial to a jury and extensive discovery which does not appear to have been completed. Moreover, they do not involve the same degree of urgency present in the federal claim.

For these reasons, it appears to me that to hitch the state claims to the federal claims may prejudice Daniel's interests rather than protect them. This is especially true to the extent that the plaintiffs' claims raise an allegation of "educational malpractice", an emerging cause of action which is novel in Wisconsin and which has been hotly disputed in other states. See *Wilson v. Continental Insurance Co.,* 87

**592**

Wis.2d 310, 274 N.W.2d 679 (1979) (rejecting educational malpractice claim for mental injury on facts not involving special education for handicapped children); *Tubell v. Dade County Public Schools*, 419 So.2d 388 (Fla.App.1982) (dismissing claim that child was wrongfully mistested and misclassified and as a result was improperly placed in a special education program); *B.M. v. State*, 649 P.2d 425 (Mont.1982) (recognizing a duty of reasonable care in testing and placing plaintiff in an appropriate special education program). For this reason, I believe it would be a more appropriate use of my discretion to permit the courts of Wisconsin to chart the course of educational malpractice law. Faced with a similar situation, the district courts in *Georgia Association of Retarded Citizens v. McDaniel*, 511 F.Supp. 1263, 1283 (N.D. Ga.1981), *aff'd*, 716 F.2d 1565 (11th Cir. 1983), and *Yaris v. Special School District*, 558 F.Supp. 545, 563 (E.D.Mo.1983) reacted the same way that I will act. EAHCA's foremost interest in prompt resolution of disputes concerning the appropriate educational placement of handicapped children is best served by paring away those state claims which will impede the speedy determination of Daniel's rights.

6. *Count V:* The FERPA Claim.

■ Count V also raises an allegation that the defendants breached the plaintiffs' right of privacy under the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232, *et seq.* This claim must be dismissed because FERPA does not provide private litigants with a damage remedy in a federal court. *Girardier v. Webster College*, 563 F.2d 1267, 1276–77 (8th Cir.1977). Accordingly, this claim is also dismissed.

CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss all Counts of the Complaint except number 1 is GRANTED.

IT IS FURTHER ORDERED that a status conference to discuss the method and means by which Count 1 will be resolved will be held on March 22, 1984, at 8:30 a.m.