Virginia **SECOR** and David
Secor, Plaintiffs,

v.

**RICHMOND SCHOOL JOINT DISTRICT NO. 2 LISBON–PEWAUKEE, Alfred Zietlow, John Klas, and Thomas McGinnity, Defendants.**

Civ. A. No. 87–C–1012.

United States District Court,
E.D. Wisconsin.

Aug. 4, 1988.

Robert Sutton, Sutton & Kelly, Milwaukee, Wis., for plaintiffs.

Timothy Dugan, von Briesen & Purtell, Jonathan Ray, Kasdorf, Lewis & Swietlik,

Milwaukee, Wis., for School Dist. and McGinnity.

Ellen Ryan, Riordan, Crivello, Carlson & Mentkowski, Milwaukee, Wis., for Zietlow and Klas.

## ORDER

TERENCE T. EVANS, District Judge.

This case demonstrates the difficulties that arise when elaborate legal systems are established to meet very individual needs. It involves Virginia and David Secor's efforts to ensure that their child Alison received the best possible education. And it entails a school district that followed the letter of the law, perhaps overzealously, to vindicate its decisions with regard to Alison.

The defendants have moved for summary judgment on a variety of grounds, the most significant of which is that the Secors did not exhaust their administrative remedies before seeking judicial relief. I agree with the defendants' position and therefore will grant their motions. My decision, however, does not mean that I believe they always treated the Secors well. To the contrary, their effort to take Alison to school one day, as well as their truancy prosecution, seemed to reflect poor judgment. They are entitled to win here only as a matter of law—the law being the Education for All Handicapped Children Act, 20 U.S.C. § 1400 *et seq.*

## FACTS

The plaintiffs and defendants disagree over many facts in this case, but none that are material. The record contains no important disagreements concerning the material issue—the exhaustion of administrative remedies.

Virginia and David Secor are the parents of Alison Secor, who was born on February 23, 1975. They live in Sussex, Wisconsin, in a school district known as Lisbon–Pewaukee Joint District 2. The district encompasses just one school: the Richmond School. At the time of this dispute, Thomas McGinnity was Administrator of the Richmond Elementary School. John Klas was Director of Special Education for the Lake Country Exceptional Education Cooperative, which evaluates the needs of students who attend certain schools in Waukesha County, including the Richmond School. Alfred Zietlow was Director of Transportation for the Lake Country Exceptional Education Cooperative.

In April 1980, Alison's parents had her speech and language skills evaluated by experts at Marquette University, who recommended that the child receive therapy. In September of that year, Alison was enrolled in Richmond School's kindergarten. Virginia Secor informed the kindergarten teacher that Alison should have further testing so her needs could be met. Such testing was completed by November, and Alison began receiving speech and language services.

In May 1981, the Secors gave Richmond School permission to have a so-called multidisciplinary team (M-team) evaluate Alison and prepare an Individualized Educational Program (IEP) for her. An M-team prepares an IEP pursuant to state laws that were enacted to bring Wisconsin in compliance with the federal Education for All Handicapped Children Act. *See* § 115.80, Wis.Stat.; 20 U.S.C. § 1401(19). An IEP describes the handicapped pupil's educational needs and the specially designed instruction to meet those needs. It is to be developed in consultation with the child's parents. § 115.80(3)(c), Wis.Stat.; 20 U.S.C. § 1412(7)(A).

Virginia Secor says school officials had already developed an IEP for Alison for 1980–81 and that the Secors were not allowed to participate in the writing of the 1981–82 IEP. The defendants do not directly dispute this. They highlight the fact that on August 28, 1981, John Klas sent the Secors a Notice of Intent to Place and an Offer of Placement for the coming fall. The Notice of Intent explained that, following the M-team's recommendations, Alison would be placed in a learning disabilities/speech and language program. The Offer of Placement requested parental consent and stated:

If you believe the board has placed your child in a special education program that does not satisfactorily serve his needs (or has failed to place your child in a special education program that would benefit your child), you have the right to request a hearing to appeal this decision.

The form also contains a lengthy list of the rights which parents have under the law, including the right to "[r]efuse consent for placement in special education." Hearing procedures and safeguards are described as well. Among these is the provision that a child's placement will not be changed during the hearing process unless the parents and school agree.

The Secors never returned the form, and they did not request a hearing. Alison was enrolled in Richmond's regular education system in the fall of 1981, though Virginia Secor says she discovered that Alison was in fact placed in a learning disabilities program there. By then, the Secors and Richmond officials were at loggerheads over Alison's future. Beginning in January 1982, the state Department of Public Instruction attempted to mediate. There was a series of telephone calls, meetings, and letters between the Secors and Richmond officials through the end of 1982 and early 1983.

In April 1983, the M-team proposed an IEP for the remainder of the 1982–83 school year. Under this IEP, Alison would be placed in a speech and language/learning disabilities program at Calhoun School, a school in New Berlin, Wisconsin, which offered more intensive services to students with severe problems in these areas. Mr. Klas mailed the Secors another Notice of Intent to Place and Placement Offer. The list of parental rights was again included. David Secor returned the Placement Offer with his consent, but he made an amendment above his signature. The amendment stated in relevant part:

My signature below is for an interium [sic] IEP and interium [sic] placement until June, 1983. This is to be looked at

as a trial placement to be discussed and analyzed at the end of this period before a final decision is made and signed by me.

Alison attended Calhoun School from May 6 to the end of the 1982–83 school year.

In June 1983, Richmond officials had another IEP developed for Alison, one for the 1983–84 school year. The Secors attended the IEP meeting, but assert that they did not approve the plan itself. Mr. Klas says he then sent the Secors a new Notice of Intent to Place and Offer of Placement, proposing that Alison attend Calhoun School for 1983–84. The Secors did not return the papers or request a hearing.[1]

Things became very heated at this point. At the start of the school year, the Secors placed Alison in the regular third grade program at Richmond, not in Calhoun School. On August 31, 1983, Mr. Klas mailed a letter to the Secors informing them Alison had missed three days of school at Calhoun and threatening that officials would enforce state truancy laws if Alison did not show up at Calhoun. On September 8, 1983, Klas sent another letter, asking the Secors to reject the Calhoun placement in writing. He observed, "I am led to conclude by your enrolling Alison over at Richmond School that you are rejecting the June 20th Placement Offer...."

At about 8 a.m. on November 7, John Klas and Alfred Zietlow "went to the Secor home to take Alison to the Calhoun School," in the words of Klas's affidavit. The Secors' complaint paints a somewhat different picture: "The plaintiff, Virginia Secor, confronted defendants Klas and Zietlow, and demanded of them authority for coming to the home. They advised that they were instructed to pick Alison up. The plaintiff, Virginia Secor, refused to allow the defendants to have custody of Alison and they departed. Alison was frightened at that time and inquired as to whether or not she was going to be taken

---

1. Virginia Secor says in her affidavit that she does not recall receiving the Offer. However, her attorney attached a copy of the Offer to his own affidavit, thus indicating that the Secors did in fact receive the document.

to 'jail.'" Later that day, the Secors received a letter from Richmond's lawyers that said 1) Alison would no longer be admitted to Richmond, 2) the Secors could appeal the Calhoun placement, and 3) the school would compel Alison's attendance at Calhoun using the truancy laws. Mr. Klas and Thomas McGinnity later sent two additional letters threatening truancy prosecution.

Beginning on November 9, the Secors had Alison attend private schools and learn through home study. She was "mainstreamed" in the private schools, and the Secors say she did well. They asked Richmond to provide Alison with free transportation to the private schools; Richmond refused. On December 6, 1983, the Secors' attorney wrote Klas, alleging various legal violations by Richmond officials and requesting that Alison be allowed to attend Richmond School. Mr. Klas replied on December 9 that the Secors should initiate a hearing.

In March 1984, the school district itself initiated the hearing procedure. The school board's clerk sent the Secors a lengthy recitation of their due process rights. In the meantime, however, school administrators had triggered a truancy prosecution of the Secors in Waukesha County Circuit Court. Proceedings in that matter dragged on through the summer and fall of 1984 and culminated in dismissal of the case.

Due to several delays by the Secors, the hearing process dragged on, too. At one point—April 18, 1984—Richmond offered to dismiss the truancy prosecution, reimburse the Secors $900 for private school tuition, and establish a time line for development of an IEP for 1984–85. The Secors did not accept the proposed settlement. As the rescheduled final hearing date drew closer, attorneys for the Secors and Richmond disputed the purpose of the hearing: Richmond thought it would resolve issues for 1983–84, and the Secors wanted it to resolve issues for 1984–85. On June 7, 1984, the Secors' lawyer wrote the hearing examiner to say that the Secors would not attend because "[t]he entire process appears to be nothing more than an ex post facto attempt by the School District to 'whitewash'" past decisions.

The hearing examiner, Dr. Paul A. Haubrich, went ahead with the hearing on June 7. In a six-page opinion issued on July 5, 1984, he reviewed the history of the dispute since 1980 and found that the school district had acted reasonably and in compliance with the law. He wrote, "The fact that Alison did not participate in programs offered by the Richmond School District is not attributable to the actions of the District and their representatives."

The Secors did not exercise their right to appeal Dr. Haubrich's decision. They tried to obtain a transcript of the hearing at no cost, but could not get one despite the examiner's recommendation to Richmond that they be supplied with a complimentary record. Appeal rights lapsed after thirty days.

About three years later, on August 12, 1987, the Secors filed suit in Waukesha County Circuit Court seeking an injunction that would require the defendants to provide Alison with free transportation to private school. The Secors also sought a total of $118,215.55 for the past and future costs of Alison's private education. The suit was based on three Wisconsin statutes, two articles of the Wisconsin Constitution, and the federal Education for All Handicapped Children Act. On August 28, 1987, the defendants removed the case to federal court on account of the federal claim. They moved for summary judgment on April 6, 1988, and both sides briefed the issues.

Since the fall of 1987, Alison has been attending the regular education program at Richmond School. The district provides free transport to and from school. Virginia Secor says "the agitation and harassment to classify [Alison] as in need of specialized teaching has begun again."

## DISCUSSION

My detailed recitation of the facts shows two things: First, the defendants probably did their jobs with too much gusto and, in the process, ended up harassing the Secors.

Specifically, the truancy prosecution and the early-morning visit to the Secors' residence appear to be ill-advised. Second, the Secors missed plenty of opportunities to follow state appeals procedures to resolve the matter once and for all. This second observation warrants judgment for the defendants, notwithstanding my first observation.

Under the Education for All Handicapped Children Act, a party who disputes the child's proposed placement may not initiate a civil action without first appealing the decision to a hearing examiner and, if applicable, to the state educational agency as well. 20 U.S.C. §§ 1415(b), 1415(c), 1415(e)(2). When an action is properly filed, the court reviews the records of the administrative proceedings and hears additional evidence at the request of a party. 20 U.S.C. § 1415(e)(2). Wisconsin provides for a two-step administrative hearing/appeal process. §§ 115.81(6) and 115.81(7), Wis.Stat.

Several courts have held that exhaustion of administrative remedies is required before a court can hear this kind of claim. *See Timms v. Metropolitan School District of Wabash County, Indiana*, 722 F.2d 1310, 1316 (7th Cir.1983); *Riley v. Ambach*, 668 F.2d 635, 640 (2d Cir.1981); *Williams v. Overturf*, 580 F.Supp. 1365, 1371 (W.D.Wis.1984); *Daniel B v. Wisconsin Department of Public Instruction*, 581 F.Supp. 585, 588 (E.D.Wis.1984), *aff'd w'out op.*, 776 F.2d 1051 (7th Cir.1985), *cert. denied*, 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986). In the last case, *Daniel B*, I reviewed the purposes of the exhaustion requirement, which had been first described in *Riley*:

> [T]he requirement respects the state interest in establishing and maintaining a comprehensive scheme of regulation for state schools. The requirement vests authority over these types of decisions in an expert supervisory body, far more familiar than a federal court with the local factors and educational needs involved in administering special education programs. The requirement insures that if the expert agency cannot resolve the problem itself, the record on which the

federal court must decide will be fully and efficiently illuminated for the court's decision.

In the dispute now before me, the Secors could have invoked the state hearing procedure at numerous junctures. They were informed of their rights many times and even had legal counsel through much of period. The administrative process was in no way futile, since the status quo would have been frozen pending the outcome of the process. Perhaps a court could have settled any dispute over what the status quo really was—Richmond or Calhoun—but that time is long past. Even if the eventual hearing was merely a "whitewash" of a fait accompli (though I do not think so), the Secors could have appealed the effect of the examiner's decision, laying the groundwork for a lasting solution. Access to the hearing record was not essential to file an appeal for purposes of exhausting administrative remedies.

I am not persuaded by the Secors' citation to *Burlington School Committee v. Massachusetts Department of Education*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). That case held that a court may order a public school district to reimburse parents for the cost of sending their child to private school when the alternative schooling, rather than the proposed IEP, is later deemed proper. But in *Burlington*, the parents had exhausted their administrative remedies by the time they appeared in court. *Id.* at 363, 105 S.Ct. at 1999. Thus, *Burlington* stands for the proposition that the Secors would not have waived their right to reimbursement by placing Alison in private school and then going through the hearing procedure, with judicial review if necessary. It does not excuse a hurdle over the administrative process.

For the foregoing reasons, I will GRANT the defendants' motions for summary judgment. The claims under the federal Education for All Handicapped Children Act are DISMISSED. That leaves a number of state claims, including ones under the Wisconsin Constitution. Those claims should be adjudicated in the Secors original forum

of choice, the circuit court for Waukesha County. Accordingly, the Clerk shall return this case to Waukesha County so that the court there can give its attention to the remaining issues.